In the Matter of HAROLD YOUNG et al., Respondents, *v.* BOARD OF ZONING APPEALS OF THE INCORPORATED VILLAGE OF GREAT NECK ESTATES, Appellant.

Second Department, December 28, 1970.

*Bentley & Owens (Edward S. Bentley* of counsel), for appellant.

*Koeppel Hyman Sommer Lesnick & Ross (Adolph Koeppel* and *William D. Siegel* of counsel), for respondents.

HOPKINS, J. The petitioners Young own a corner plot comprising 14,000 square feet, having frontages of 140 feet an Elm Street and 100 feet on Hillside Avenue in the Village of Great Neck Estates. Under the village's Zoning Ordinance it is located in the Residence C District of the village, thus requiring a plot of a minimum of 6,000 square feet and a minimum frontage of 60 feet. On the premises stands a three-story dwelling erected in 1927. The petitioners applied for a permit to construct a dwelling on the vacant easterly 60 feet of the premises, upon the basis of a contract to sell the easterly 6,000 square feet to petitioner Festa.

The appellant Board of Appeals affirmed the denial of such building permit, treating the appeal as an application for a variance. The board found that the presently standing dwelling failed to conform with the requirements of the Zoning Ordinance in that (1) it exceeded the 35-foot height limit by 9½ inches and (2) its porch is but 15.5 feet from Hillside Avenue, thus violating the minimum 20-foot front yard requirement. The board further found that the sale of the 6,000-square foot plot would create three other violations, namely, (1) the new rear yard of the present dwelling (opposite the frontage on Elm Street) would be only 12 feet, as against a minimum of 15 feet required by the ordinance, (2) the area of the present dwelling — 2,053 square feet — would exceed the 2,000 square feet permitted by the ordinance and (3) the easterly wall of the present dwelling — 34 feet in height — would exceed by 9 feet the permitted height of 25 feet. In addition, the board found that the cesspool serving the present dwelling, though presumably conforming when constructed, would not meet present requirements of the Plumbing Code of the village, since it was placed in a yard having 12 feet, as compared to the minimum requirement of 20 feet from the walls of a dwelling.

The Special Term annulled the board's determination, holding that the present nonconformities of the dwelling may be continued under the ordinance, that the violations said to come into being by the subdivision would be caused only because of the change of the designation of front yard from Hillside Avenue

to Elm Street, and that there is no evidence that the cesspool need be relocated. We agree with the result reached by the Special Term.

We do not deal here with a question of substandard lots (cf. *Matter of Fina Homes* v. *Young*, 7 N Y 2d 845; *Matter of Chasanoff* v. *Silberstein*, 6 N Y 2d 807). The proposed subdivision will produce two plots, each of which conforms to the ordinance. The board treated the application for a building permit to erect a dwelling on the plot to be sold as an application for a variance and it denied the variance on grounds which do not accord with the principles of *Matter of Fulling* v. *Palumbo* (21 N Y 2d 30, 33) —that, once it is demonstrated that an owner will suffer significant economic injury by the application of an area standard ordinance, then the standard must be justified by a showing that public health, safety and welfare will be served by a denial of the variance. Those principles have been extended by us to all regulations of allowable dimensions of land (*Matter of Emmenegger* v. *Board of Appeals of Inc. Vil. of Garden City*, 33 A D 2d 393, 395).

Each of the nonconformities with the zoning and plumbing ordinances (either present or prospective in the event of the subdivision) falls within the group of regulations of the allowable dimensions of land. But none of them in our opinion is of such moment to represent, either singly or collectively, a substantial deviation from the requirements, or a danger to the public health, safety and welfare of the community. The existence of the present dwelling must be accepted as a nonconforming use, the second dwelling will be built on a conforming plot, and the loss to the owner by a rigid enforcement of the ordinances is not overcome by the inconsequential gain to the community.

A contrary result is not dictated by *Contino* v. *Incorporated Vil. of Hempstead* (27 N Y 2d 701, revg. 33 A D 2d 1043 on the dissenting opinion in this court). *Contino* dealt again with a substandard plot and permits an appropriate municipal authority to consider the deliberate and self-created hardship arising from transactions ending with a residual substandard plot as a factor in the enactment and enforcement of a zoning ordinance. This factor is not present in this case.

In short, the right to use a conforming plot should not be lost except for reasons based on a clear showing of direct or probable harm to the community. There is no such showing here. In all applications for a variance there can be no rigid or inflexible rule by which the application must be granted or denied; rather, the disposition of such applications rests on

the consideration of particular factors which must be given varying weight under the peculiar circumstances presented.

Accordingly, the judgment of the Special Term should be affirmed, without costs.

BENJAMIN, J. (dissenting). In my opinion, *Contino* v. *Incorporated Vil. of Hempstead* (27 N Y 2d 701, revg. 33 A D 2d 1043 on the dissenting opinion in this court) controls this case and requires confirmation of the Board of Appeals' determination.* Indeed, in *Contino* the property owners had a markedly stronger case for a variance than the petitioner at bar, yet the Court of Appeals held that they were not entitled to it.

The statement in the majority opinion that *Contino* is distinguishable because it involved a substandard plot, while this case does not, is not supported by the records in the two cases. In *Contino,* as at bar, the property owners owned an oversize plot which they wished to divide into smaller parcels; in *Contino,* as at bar, each of the resulting parcels was *larger* than the minimum area required by the zoning ordinance; in *Contino* the nonconforming resulting parcel was nonconforming only with respect to one front yard, while at bar the nonconforming resulting parcel does not meet the requirements with respect to the rear yard, the height of the building, the area of the building, and the location of the cesspool.

An examination of *Contino* vis-à-vis the case at bar clearly shows why the holding in *Contino* must be applied here. In *Contino* the resulting parcel was a corner plot, trapezoidal in shape, and it abutted on three streets; the zoning ordinance required a front yard 25 feet deep on each side of a corner plot that abutted on a street; the proposed house on that parcel failed to comply with the zoning ordinance in the single respect that one of its three front yards was only 15 feet deep, with the other two meeting the 25-foot requirement; the inadequate front yard was actually what would normally have been the rear yard, since it was at the back of the proposed house, and a rear yard had to be only 10 feet deep; and, because the house would have three front yards, it obviously would have had more space around it for lawns, flowers and shrubbery than other houses in the area, and it could not possibly have had an adverse effect on the light and air of any adjoining house. Yet on those facts the Court of Appeals denied relief to the property owners, mainly on the ground that " it is not an unreasonable exercise of discretion [by a Board of Appeals] to deny permission to build on sub-

---

* The holding in *Contino* has recently been reaffirmed and re-emphasized in *Matter of 113 Hillside Ave. Corp.* v. *Zaino* (27 N Y 2d 258).

standard plots where * * * the substandard condition results from acts of an owner of a conforming plot in so subdividing his holding as to create one or more parts of insufficient area * * * [and] there is no infringement of constitutional right in the requirement that land may not be so divided as to create substandard plots '' (*Contino* v. *Incorporated Vil. of Hempstead,* 33 A D 2d 1043, 1044).

In the present case the nonconformity of the parcel is much more serious than in *Contino.* Here, the rear yard would lack 3 feet of the required 15; the area of the house would exceed the permitted maximum; one wall of the house would exceed the permitted height by more than a third; and the cesspool would be only about half of the required distance from the building. Even more serious is the fact that in this case, unlike *Contino,* there is an express provision in the Zoning Ordinance (§ 30.03) which prohibits the division of a plot in such a way that either the remaining part or the part set off becomes nonconforming; and it is undisputed that the division of the plot in this case created the just-described nonconformities.

If in *Contino,* without an express prohibition in the ordinance, it was held not an abuse of discretion to deny permission to create a nonconforming plot by splitting up a conforming plot, I do not see how we can say it was an abuse of discretion to do the same thing in this case, where such ruling by the Board of Appeals conformed to an ordinance squarely forbidding such division of a plot. And if it was not an abuse of discretion to deny relief in *Contino,* where the nonconformity was single and minimal, it clearly cannot be an abuse of discretion to deny relief here, where the nonconformities are multiple and substantial.

In my view, the majority is merely substituting its discretion for that of the Board of Appeals and that it may not do. It is not and cannot be our function to make *ad hoc* original determinations on variance applications; that is the function of the Board of Appeals. Our function is merely to review the board's determinations; and, if they have a rational basis, to confirm them, even though we may ourselves have exercised discretion differently were we the board. Were it otherwise, the Board of Appeals would become merely an advisory body and the courts would assume the functions of the board. That is a burden which the courts should not and cannot assume, as it is not a proper judicial function and it was never even remotely contemplated that they undertake it.

The judgment should be reversed, the petition dismissed on the merits, and the determination of the Board of Appeals confirmed.

CHRIST, P. J., RABIN and BRENNAN, JJ., concur with HOPKINS, J.; BENJAMIN, J., dissents and votes to reverse the judgment, dismiss the proceeding on the merits and confirm appellant's determination, with an opinion.

Judgment affirmed, without costs.

